Case number 25-1784, Andrew Hess v. Oakland County, MI et al. Oral argument not to exceed 15 minutes per side. Robert Muse for the appellant, you may proceed. Good afternoon, may it please the court, I'm Robert Muse and it's my privilege to represent the plaintiff appellant in this case, Andrew Hess, and I'd like to reserve three minutes of my time for rebuttal. A core issue in this case is whether the courts are the first guardians of a private citizen's fundamental right to freedom of speech, whether that right must first be subject to the prejudices and whims of a jury, particularly when there is no genuine issue of material fact for a jury to decide, as in this case. Mr. Hess should not be forced yet again to endure the punishment of a felony prosecution before vindicating his fundamental right to free speech. Difficulties, hardships, and stress associated with a felony prosecution often destroy lives well before a jury is empaneled. Can I ask you a threshold question that I'll ask the other side if there's disagreement on, but what is the status of the state prosecution? Right, I expected that question. Your honor, the parties agreed to a stipulation of adjourning all state court proceedings until this court resolves the issue on the preliminary injunction. So there is no younger abstention issues, there are no comedy issues, they're deferring to this court's decision on the preliminary injunction before anything further proceeds in the state court. So like a temporary stay? Well, it's interesting because the case was dismissed, and then after the case was dismissed because of that ruling by the Michigan Court of Appeals, then we filed a civil rights lawsuit, so there was no ongoing state court proceedings, and then it got reversed by the Michigan Supreme Court. They filed a motion to reinstate the charge that has not been heard yet. So at this point, although, I mean really the consideration of that motion is really what's been stayed, and you might say procedurally. Right, so there's nothing, there's no state, there's no charges actually in state court technically right now, but all further proceedings have been adjourned. Then they could go forward, I don't know how strongly they've threatened, or at least it's pending at this point. Let me then just ask you to, you started out about saying in a case where there's no genuine issue of material fact, is that the standard we should be looking at, or should it be that no reasonable jury could find the necessary facts of a true threat under counterman? Yeah, I think the way I guess I would frame it is that it's just not possible under these facts, in light of the Supreme Court jurisprudence that this is not protected. Okay, that's more could a reasonable jury find it, because you could still have no genuine issue of what the facts are, people stipulate to what they said, and I take it, and correct me if I'm wrong, that the vast majority of the evidentiary facts, what Mr. Heff said in the lobby, what he said in the recount room, what happened in the recount, what Mr. Rosell says about his not being worried, the vast majority of all of those kinds of material facts are relatively undisputed. Is that fair? I'd say that's fair, Your Honor, because there are two main witnesses, Caitlin Howard and Joe Rosell, they're witnesses, they already testified at the preliminary examination, so we know what their testimony is going to be. Right, and from our perspective. And as to Mr. Hess's mental state in terms of acting with recklessness, is he testified in a way that's uncontested, or? He's not testified, what is in the record is his statement that he wrote to the deputy when he was confronted immediately about this, and he said, look, I didn't threaten him, I accuse him of a crime. And going to the recklessness component of it, there's no dispute that he walked out into an empty lobby where there was no government official, including Joe Rosell, made an off-hand comment that was conversational tone that happened to be overheard by somebody who wasn't even a party to the conversation, who didn't immediately report it because she was too busy being a receptionist, and then when she did report it, she said she did because she doesn't take kindly to that kind of behavior. And then bear in mind too, so Mr. Hess was in the recount room, deputy sheriff called him out, he asked him about this, he said, did you threaten his life, and it was an absurd proposition, he never did, he wrote a statement, told him, look, I accuse him of a crime, cited the statute even, then was left to go back into the recount room where Joe Rosell was to give a speech on his view that if somebody cheats on elections, they should be tried for treason. Meanwhile, the deputies you saw, the deputies are there with their arms folded, he goes home, there's no arrest, four months later they charge him with a 20-year felony for making a terrorist threat. Now bear in mind, this isn't just a straight-up threat statute, this is a terrorist threat statute, so in addition to a serious expression of intent to commit harm, it is a serious expression of intent to commit an act of terrorism. So it has to be intended to intimidate or coerce, in this case, the conduct of government or a unit of government through intimidation or coercion. If it's a terrorist threat to make an offhand comment in an empty lobby where no government official is around, but yet just simply overheard by somebody who doesn't take kindly to that words, it's just not possible. Watts is controlling in this case, because this arises in the political context, like Watts did. And remember, Watts was a case where the jury found him guilty, so there's nothing sacrosanct about necessarily what a jury may decide. The court reversed, appropriately so, the jury conviction. We also mentioned NAA, the Claiborne Hardware case, which was a civil case, but still it was a reversal of those findings, relying on Brandenburg. And we brought up Brandenburg, because Brandenburg does apply in this case. It applies because of the political context. The judge below said, well, that only applies to incitement speech. Well, that's only part of it. The part of it is the speech has to incite. That's the intent of what the speech is. In a political context, because Brandenburg, and this is what the statute that was held facially unconstitutional in Brandenburg, advocating the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform. So if you're making threats for the purpose of influencing government, the Brandenburg standard applies. That applies in this particular case. The political context is exceedingly important. In counterment itself, what did they say, if anything, in relation to Brandenburg? I think one of the more studious observations in counterment was in the dissent by Justice Amy Coney Barrett. And she made the point that while they were right, that in the political context, Brandenburg has this higher specific intent. So that one part she agreed with. And Thomas disagreed with whether or not it should just be, you know, they thought it should just be an objective standard, not this heightened level of recklessness. But she highlighted, in fact, I have a, she said, I'll give the court this much. Speakers must specifically intend to incite violence before they lose First Amendment protection, citing to Brandenburg. She says, specific intent requirement helps draw the line between incitement and political inciting NAACP versus Claiborne Hardwood. And if you call it Claiborne Hardwood, it was decided on Brandenburg, right, where Charles Evers' speech, I'm going to break their necks, you know, to the crowd. And he was found guilty. They had damages. That's NAACP versus Claiborne Hardwood, Claiborne Hardwood, right. In Claiborne County. Exactly. Right. I think it is. Does it matter to your client whether you prevail on the as-applied challenge as opposed to the facial challenge? From our perspective, as long as this prosecution is enjoined, it doesn't matter, right, because I think, you know, this terrorist threat statute has been upheld in other contexts, but the political nature of this really brings into Brandenburg. So whether Brandenburg applies to this fact or should apply facially, in my view, is it should apply facially based on the way the statute reads and you compare it to the statute in Brandenburg, it's more of a syndicalism statute than it is a true threat statute like Black versus Virginia. So I think, quite frankly, I think this statute is facially unconstitutional, but for the relief that we're seeking, particularly in the case of a plenary injunction, I understand, you know, the court may want to just have a narrower ruling and just enjoin its application, which sometimes you do that and it's, and it's obviously it accomplishes what we want to accomplish. From your point of view, the limiting construction or the additional requirement of recklessness that's in the ping-ponging up and down the Michigan courts, that doesn't help? Well, it makes it harder for them to prosecute this under these facts, is what, and let me just... Therefore, it's less likely to be unconstitutional. That's, but that's, the recklessness isn't Brandenburg. That's a separate issue. I understand. And that's, and that's, and that was a point that I think Justice Barrett was making in the dissent. But here's the other thing that I, and it seems to go, aside from the fact that it has to be for the purpose of influencing government, and I don't know how an offhand comment in an empty lobby accomplishes that in any way, no matter, you know, how you look at this. But the 750.543Z, right, that's a, that's a very strong limiting construction that the Michigan legislature placed on this. A prosecuting agency shall not prosecute any person who sees any property for conduct presumptively protected by the First Amendment. I got to believe that the legislature had a case like this in mind, that this thing's not going to be weaponized to go after, to go after political speech. And it was that, actually, provision, which the Michigan Supreme Court, when it's, when it overruled the Michigan Court of Appeals decision that the statute was facing unconstitutional, they said, well, look, you have this limiting instruction, see if you can work it out. And you know, the Michigan Court of Appeals even said, right, as I understand it, in Michigan, you can both argue to the binding magistrate, and then you can take an interlocutory appeal. There's this case called Gerhard, where he lost, but nevertheless, he made exactly this argument and was able to get an interlocutory appeal. Yeah. Is that fundamentally right as far as procedure? Yeah, like, for example, when, because we went, we had a preliminary examination, the district court bonded over it, and we filed what's called a motion to quash the bind over in the circuit court, and the judge vacated the, the bind over decision and remanded for additional testimony, which was a little bit odd, because it's either they proved their case or they didn't. And then when, during the process of that remand is when the Michigan Court of Appeals decision came down, and we got the case dismissed. That procedure you just went through was available, is available, and of course, we don't know what would happen if it were to happen, but at least it mitigates some of the... It turned a likelihood of success, which is a second and equally important factor here. It quite frankly is the main factor, I think, for a First Amendment preliminary injunction. I think the case has said that is the, the determinative factor quite often, if you show a likelihood of success, and I, again, I think Watts, Claiborne, Brandenburg, I, it's just, it's impossible that this offhand comment, if this, if this secretary wasn't taken aback by this type of speech, it wouldn't be... I'm sorry, the irreparable, irreparable injury. Yeah, well, it's, yeah, irreparable harm is, as the court knows from, you know, Elrod, momentary loss of First Amendment freedoms constitutes irreparable harm. You see, but to get that, you have to be looking forward, not backwards. In other words, if he is not chilled from future speech, or is not threatened with prosecution for something that he's going to do, then the prosecution for the past is usually not an irreparable harm. But he's, but he's, he's pending, he's pending prosecution for his speech, but for, if this court issues a preliminary injunction. But it is for his... So that's for, yeah, he's... For his past speech, it's not that he is arguing that he is chilled for the future, which would be irreparable. No, it's, I, I totally think this has a chilling effect on people who want to be poll watchers and poll challengers, which he has been and wants to be. I mean, we have to look, we look to him specifically, right? We don't look at people generally.  What's this, and it's, it's whether there's a future threat, right? That's really the main thing. That's why we, we, there's a future threat of harm for him being punished for his speech. Not the fact that he just, you know... What speech does he want to engage in that is going to be punished in the future, as opposed to this statement that he specifically made that the current prosecution is for? Well, he doesn't, he doesn't want to be prosecuted for his speech in the past. This is, when you say forward looking, I mean, the reason why I need injunctions, so he doesn't have to go through another felony prosecution for engaging in free speech. That's, that is, that is a future harm. Another one, you mean, I think Judge Boggs' questions, you mean the past speech, or are you saying there's literally, there's going to be a potential another prosecution, not related to the prior speech, but to go to Judge Davis' question, is there something else he wants to say that he's... Who knows, right? I mean, that's... Well, we need to, well, that's a great question. Who knows? But we need to have some sense of what the harm here is that's irreparable, that going forward, we're, you know, we should issue, allow an injunction to issue. The momentary loss of First Amendment freedoms, that includes the threat of future prosecution for past speech. I mean, plainly. What case supports you on that? I mean, I, I mean, Elrod versus Burns makes that, makes that point very clearly. It's not that every time, if somebody's going to be prosecuted for, you know, for their And I think the record's pretty clear that he's a, he's a very standard, you know, poll challenger. And they're using this, this statute, as it were, to, you know, suppress speech that's critical of polls. That's, I mean, that's, that's what he's done and he wants to continue to do. But I think the fact that he's, he's under a threat of future prosecution for past speech is a future harm. Okay. Great. Thank you. Good afternoon, your honors. And may it please the court. Zach Larson on behalf of Defendant Appellees, Oakland County, Prosecutor Karen McDonald, Sheriff Michael Bouchard, and Sergeant Matthew Peschke. Your honors, true threats of violence are a historically unprotected category of communications that everyone agrees lie outside the bounds of the First Amendment's protection. And whether a particular communication is a true threat is a factual question for the jury as a long line of cases, both from this circuit and in other cases, is determined. What does that mean? What does that mean vis-a-vis you're saying we should not resolve it because we have to leave it to the jury? That means that ultimately, because it's a context driven and factually intensive question that yes, oftentimes, and in most cases, in the typical cases, Ozentowski, the Michigan Court of Appeals said, this has to be submitted to a jury. But you're asking for preliminary relief. So don't we have to assess whether preliminary relief, is it like a likelihood of success? Well, on the likelihood of success question, Judge Radler, what the district court did was correct, which it said that because this is typically a jury question and because there are arguments that could go either way with respect to all the different context that has to be accounted for in this test, that therefore he could not say that there was a strong likelihood of success. Because on the as-applied challenge. Every time there's a jury question in the case, and that the district judge should deny injunctive relief? I think yes, because number one, injunctive. Really, that sweeps pretty quickly. Isn't the statement, could a reasonable jury find the crime was committed? And it is a permissible question of law, in a sense, that even though it's normally a jury question, no reasonable jury, you know, given all of the context that your adversary was advocating, no reasonable jury could find this to be a true threat. And that's where you get some relief as a matter of law from a either injunction or appellate court. I think Judge Boggs, that's correct that there are certain circumstances, and the Watts case is one of them, where they have said we can find this as a matter of law. But I think that is the extraordinary circumstance. And I think that you see that throughout the cases. So comparing it to Watts, you would say specifically, it's more unclear that hang Joe for treason, a jury could find it as opposed to I'm going to shoot Lyndon Johnson if I got him in my sights. Well, I think that what the Watts case has going for it, as showing that it is a very unique circumstance, is exactly what the Supreme Court said at the very end of that opinion. And that is that if you go to Watts and you look at, it's a very short opinion, but you look at what they say at the end of that decision, they said that taken in context and regarding the expressly conditional nature of the statement and the reaction of the listeners, we do not see how it could be interpreted otherwise. So they essentially said no reasonable jury could interpret this in a way other than that it is not a true threat. It is just. It is hyperbole. I suppose the argument would be generic hang Joe for treason as opposed to I'm going to hang Joe or you should hang Joe or the people of Michigan should rise up and hang Joe. Is that an interpretation that a reasonable jury could make? Well, I think, Your Honor, the District Court got it right in identifying a number of different factors that you look at. And I think you see those factors in Watts and in other cases that are true threats cases. It said, for instance, you need to look at how the listeners responded to the statement. You need to look at how the person to whom the threat is directed would respond to the  You need to look at the location where the statement is made. You need to look at the political context. All those things, right? And you're just saying, you're saying it's a high bar. I mean, you're not saying we can never do this. It's a very high bar, Judge Radler. You're saying we can look at them and if we think that the factors are enough against you or in favor of your friend on the other side that we could find a likelihood of success. I think it's an extraordinarily high bar. You can get there. But Watts is the outlier because Watts is a circumstance, if I can explain, I would spend some time talking about the facts of this case then and how we how we should look at that. I get your I get your legal point. And in a sense, the things that you started to run through quite appropriately, I think your friend would say, yes, let's look at all of those things. And then he that was about half of his argument was the secretary wasn't distressed. The anonymous person wasn't distressed. Roselle wasn't distressed for a while. And I think, Judge Boggs, we have a very different take on those factors. So for instance, if you talk about the reaction of the listeners, first of all, there's the immediate reaction of the person next to Mr. Hess who said, that's too much. There was a admonishment or admonishment, a correction. That's in the preliminary exam testimony. The person next to him, is that the when he came back into the room? That's Mr. I think it's Brayden Giobacci. Yeah. He had a name. But my understanding was that when he first goes out into the lobby, that's secretary or staff or Ms. Howard. There's this other person who we don't have a name for. That's, I think, Judge Boggs, in the lobby. That is Mr. Giobacci in the lobby, is my understanding. And then there is the response of the secretary. Did he testify? He did not testify, but it was part of the preliminary exam testimony. On the secretary? I believe so, yes, by Ms. Howard. And then there's the response of Ms. Howard. And Ms. Howard says that, yes, she didn't leave immediately, but that's because she was, of course, maintaining her duties. But as soon as she could, she reported it. She viewed it as a genuine threat, and she reported it to the deputies, who treated it as a genuine threat and investigated it. You have the response of Mr. Rosell himself, who, due to a history with Mr. Hess, where Mr. Hess had been at previous recounts, had made criminal accusations against him. He viewed it as a genuine threat. He was distressed by it. He asked for police. He heard it secondhand, right? So he didn't actually hear it? Correct. He heard the first set of, he heard the statement back in the recount room. As I understood it, back into the recount room, makes this oration, Rosell says, ah, no problem. Then Rosell hears secondhand about what happened in the lobby. Is that right? He does hear secondhand about what happened in the lobby, though there is another statement that was made directly to Mr. Rosell that was- A little different. What's that? A little different, those statements, right? The first is just treason. The second one is, uses the word hanger, right? True, your honor. It is hang Joe Rosell in the lobby. What he didn't hear, yeah. That's the one outside. There is a separate statement that's made directly to him that is something along the lines of, treason's going to be tough, gentlemen, or something like that. So there was a more direct communication to Mr. Rosell. Can we circle back to Ms. Howard, because I think that you said that she took it as a threat. Maybe I've read the record wrong, but my understanding was that she did not take kindly to him speaking like that, and that she did not take it as a threat, but she thought that she should report it. I don't think that, Judge Davis, that it was necessarily that she simply just didn't take kindly. Those were the words she used in her testimony. That sounds like taking offense to me, as opposed to taking it as, gosh, this is a threat. Yeah. I think that if you look at her testimony in context, that she believed that it was a reportable incident. That it was something that deserved police attention, and therefore that's why she reported it. It could be reportable because you want to remove that person from the building or something, but to prosecute them for commenting on a very political issue, albeit in an aggressive way, that's a big step. Well, Your Honor, again, I think that that question of whether or not it's prosecutable goes to the question of whether or not it is a true threat, which is the context-driven multi-factor inquiry.  You have to consider that in the context of a heated political recount, where the individual has a different view than the public official. They obviously have some room to comment on that. But importantly, Your Honor, this isn't a statement that's made in the context of a political speech. It's not a statement made on the floor of the recount room. It's a statement that's made separate from that, outside, in the lobby. But isn't it tied to the official conduct of the officeholder? I don't think that it was made in that. The officeholder is the head of elections. The exact statement was, hang Joe for treason, or hang Joe Roselle. It wasn't made in a conditional manner, right? So contrary to, or distinct from Watts, where you have this conditional statement, if I'm ever drafted, if I'm ever forced to carry a rifle, then I want LBJ in my sights. This is a statement that's made in absolute terms. Are you saying that the statement in the recount room then could not be charged, but the statement in the lobby could? Correct, Judge. He is not being charged for what's said in the recount room. He is being charged for what is said separate from that, in the lobby. And so... How much time passed in between? That is not very clear, honestly, Judge. Approximately? It's the same day, but it's not clear in terms of the exact timeline there. I do want to address the Brandenburg arguments that have been made. I think that as the court handled this matter on the motion panel, the court appreciated, at least the motion panel appreciated, that there are distinct categories of First Amendment exclusions. This is not a Brandenburg case because Section 453M is not a Brandenburg type statute. It's not an incitement statute. Mr. Hess was charged originally for language that is more the direct threat to an individual. There is separate language that can be construed potentially in a different manner, but the courts have repeatedly construed this statute as a true threat statute, and the language under which he was charged is a true threat category of exclusion. So Brandenburg is simply irrelevant in the same way that New York Times v. Sullivan would be irrelevant. What's your take on the importance of subsection Z about anything protected by the First Amendment that does not fall under this statute? Judge Boggs, in Kavaznica, that's one of the subsection Z and the Ilanis cases were the reasons why the Court of Appeals, when looking at the statute again, said that they could infer that there is some form of subjective intent requirement there. I think that given that they've construed the statute in that manner, the statute is clearly constitutional as a true threat statute because it meets all of the countermeasure requirements, and that's exactly what the motion panel did. It laid out how it's been construed, and therefore it fits within the case law. Getting back to briefly, though, the question of the Watts distinctions. Certain things are not true threats because they're made in jest, they're clear hyperbole, etc. Watts is a case where Watts laughed when he made the statement. His listeners laughed when he made the statement. Here, by contrast, Mr. Hess is making a statement and he's immediately rebuked by those who are next to him. Mr. Giabacci. There's so much speech that's very similar to this online, right? Social media has all kinds of statements that are very much like this. They might get a thumbs up or a thumbs down, maybe they get a few thumbs down, so that's a rejection of the speech, but it just feels like this argument sweeps really far, especially just given the modern mediums where people are communicating messages all the time online. Judge Raylor, I don't think that the argument sweeps far. I think that the ultimate determination here is for a jury to make. I think that ultimately, that's what this court's case law in Tames has said. Either a jury could convict them for this, in which it does sweep far, or they couldn't convict them, in which case we should potentially issue an injunction because they have a high likelihood of success. I think that, again, whether a jury can convict comes to the question in the way that Judge issue an injunction comes to the question that Judge Boggs has raised, which is whether no reasonable jury can reach that conclusion. If you say no reasonable jury can reach that conclusion, then yes, you can demonstrate like and once that this is a decision that can be made as a matter of law, but in the absence of being able to say that, you have to reach the conclusion that it goes to a jury to make that decision, just like this court has said in the Tames decision, just like it said in Hankins, just like the Eighth Circuit has said in Lincoln, the Second Circuit in Malik. Multiple cases across various circuits have addressed that question and said, by and large, the typical circumstance is to send that question to a jury. So the people of Michigan, when they're posting online, they should understand that there's a chance that if they post Hank, whoever, a politician, that there's a chance the Michigan, the Oakland County prosecutor will prosecute them, and they may face a prosecution, it will be up to the jury to decide. They should understand, Your Honor, that if it is a statement that is made that can be objectively understood by a reasonable observer as a true expression of a serious, or a serious expression of intent. There's a lot of online statements that just seem very, very similar to this. So at least what I usually see is, so-and-so is committing treason, and we know the punishment for treason is death. I've probably seen that a dozen times. Well, Judge, Your Honor. Would that be a true threat? If something is stated in a conditional manner, that is different. That's one of the factors, and it's one of the distinctions between this case and Watts. If it is stated in a conditional manner, if something were the case, if, in fact, this person is found guilty of treason, then they should be punished accordingly. That's different. That's not the facts of this circumstance. The word treason is the same as Hank Joe? The statement specifically, though, was Hank Joe Roselle. Not Hank Joe for treason, but Hank Joe Roselle. So it is an unconditional, absolute statement. It is a statement that's made not in the context of a political speech, but outside in the lobby, and that when taken together with various factors, including the context of adversarial interactions between the two, that can be reasonably understood as a true threat. Can you talk about reparable harm for a moment? Sure. I think that with respect to the reparable harm question— Your friend on the other side says the fact that your client is hanging sort of Damocles over your friend on the other side's client, that he may get prosecuted going forward, that's enough threat of—that's an irreparable harm that we should address, or we can address. Does it count? Your Honor, I don't think it does. I think the way in which this Court, in its questions, was articulating the standard is correct that you have to be looking at—perspectively, you have to be looking in a forward-looking manner. I think the way in which they've briefed irreparable harm largely collapses on the question of likelihood of success on the merits. If Mr. Hess said the same thing again in sort of the same context, I assume the prosecutor would prosecute again? I think, again, it's a facts and circumstances determination, and so it's a multi-factor analysis. It would have—you know, there's not necessarily identical similarities between two statements. It doesn't sound like someone who's going to just go quiet. I mean, it sounds like someone who's pretty politically active, politically engaged, probably not going to just stop speaking. Well, I think, Your Honor, in that event, though, characterizing it that way, it is a speculative harm in terms of what he may say in the future, in what circumstances, and I think the Court has repeatedly said that, you know, you can't speculate and base irreparable harm off of a speculative harm. So I don't think that you can base it off of a hypothetical. I think that what we're talking about and what we've been briefing is the past harm, and that ultimately collapses on the likelihood of success on the merits. In terms of the degree of harm, Amat, was I generally right about the Michigan procedure, the Gerhard case, that he would have the opportunity, at least, to challenge at the Bindover stage and by interlocutory appeal whether any reasonable jury could find him guilty? Yes, Your Honor. I think you framed that correctly, and I think that that detracts from finding irreparable harm at this stage. His argument, of course, is, well, there's certainly harm about being hauled into court and so forth, but at least he has some avenue before he gets convicted by a jury. Understood. Okay. Thank you. Thank you, Your Honor. Regarding the use of this kind of language, as we put in the record, the Lenawee County Democratic Party sent out a tweet, anybody who is trying to make Donald Trump King is a traitor who should be hanged by the neck until dead. You can go by, hang Joe Biden for treason t-shirts. The actual statement was, hang Joe for treason. That was it. It wasn't how he described it, it wasn't exactly right. That is conditional in this respect. He's not a prosecutor. He can't prosecute anybody for the crime of treason. When he was immediately confronted by the deputy sheriffs, that's exactly what he told them. He said, I accuse him of a crime. He talks about his past instances with Mr. Hess and Mr. Rozelle. It's always accusing him of a crime. And that's what he said, that's what I was doing. He said that right away. They let him back into the recount room without any issues whatsoever. The post that you had, that's in the record somewhere from the Democratic, who was the  It's in our reply brief. It's on page 15 of our reply brief. I can look it up, thanks. And the judge was dismissive on our equal protection claim that, look, nobody is prosecuting these Democrats for making very similar comments. But even to the point, if he mentioned the Thames case, and it's pronounced Thames, I know it was my case, I think in the reply brief, we laid out all the differences between those and the facts. Because it does make a difference. And in the Hankins case, this court said, and made this important, there was no political context to Mr. Hankins' statement. The political context of this is exceedingly important. And with regard to the reprobable harm, I just want to make this one point. This is what the district court judge, in his ruling, he said, if plaintiff's statement was protected speech, being criminally prosecuted for that speech would constitute a reprobable harm. And he cites the LRAD. I totally agree with that. And it's not just a matter of, Judge, you said, well, there might be some state court remedies. As soon as he's being held and charged again for this felony prosecution, he loses his CPL right away. He gets placed on bond conditions that place a bond on top of him that restricts his travel. If not put in pretrial confinement, thank goodness we were able to fight that off. There's punishment that comes through. Are those restrictions, those were previous or are they in effect? Well, that's, no, because when the case was dismissed, but once it's brought back, those things will all be brought. He tried to get jobs over Christmas, and this was in the record too, to get extra money to buy Christmas gifts for his kids, but he couldn't because he had this felony charge hanging over his head. I mean, there's, the process is punishment. That's why we're trying to head this off here so he's no longer further punished for protected speech. We'd ask that the court issue this preliminary injunction forthwith. Thank you. Appreciate the arguments from both sides. The case will be submitted.